IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO AGRIO,<br><br>    Petitioner,<br><br> vs.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-03525 JW (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

  Petitioner, an inmate currently incarcerated at the California Correctional Training Facility in Soledad, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") decision of May 18, 2004, finding him not suitable for parole.

  The Court found that the petition, liberally construed, stated a cognizable claim under § 2254, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer, and petitioner filed a traverse.

///

**BACKGROUND**

Petitioner was convicted by a jury in Superior Court for the State of California in and for the County of San Diego of second degree murder in 1989, and was sentenced to seventeen years to life in state prison with the possibility of parole. According to the petition, petitioner's minimum eligible parole date was April 30, 2000. The BPT denied petitioner parole in 1999 and 2002. The BPT again found petitioner not suitable for parole on May 18, 2004. Petitioner challenged the panel's May 18, 2004 decision in the state superior, appellate and supreme courts, alleging that the BPT's decision denying him parole violated due process. Petitioner exhausted this claim in the state high court, and filed the instant federal habeas petition on August 31, 2005.

**DISCUSSION**

A.   Standard of review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if

1  the state court arrives at a conclusion opposite to that reached by [the Supreme]
2  Court on a question of law or if the state court decides a case differently than [the]
3  Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529
4  U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal
5  habeas court may grant the writ if the state court identifies the correct governing
6  legal principle from [the] Court's decisions but unreasonably applies that principle
7  to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.   Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's May 18, 2004 decision finding him not suitable for parole on the ground that the decision does not comport with due process. Petitioner has appeared before the BPT approximately three times, including the May 18, 2004 hearing, without being granted parole. Petitioner claims that the BPT's finding that petitioner, if released, would pose an

1  unreasonable risk of danger to society or a threat to public safety was "arbitrary and
2  capricious as it conflicts with all the evidence presented at his hearing, and thus
3  violates his [Fifth] Amendment liberty interest as well as his state and federal due
4  process rights." (Pet. 6.)

5  California's parole scheme provides that the board "shall set a release date
6  unless it determines that the gravity of the current convicted offense or offenses, or
7  the timing and gravity of current or past convicted offense or offenses, is such that
8  consideration of the public safety requires a more lengthy period of incarceration for
9  this individual, and that a parole date, therefore, cannot be fixed at this meeting."
10  Cal. Penal Code § 3041(b). In making this determination, the board must consider
11  various factors, including the prisoner's social history, past criminal history, and
12  base and other commitment offenses, including behavior before, during and after the
13  crime. See Cal. Code Regs. tit. 15, § 2402(b) - (d). This parole scheme "gives rise
14  to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306
15  F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release
16  date has never been set for the inmate because "[t]he liberty interest is created, not
17  upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v.
18  Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (finding initial refusal to set parole
19  date for prisoner with 15- to- life sentence implicated prisoner's liberty interest).[1]

20  It is well established that due process requires that "some evidence" support
21  the parole board's decision not to release the prisoner. Biggs, 334 F.3d at 915
22  (holding that Superintendent v. Hill, 472 U.S. 445 (1985), which required "some

---

[1] The Supreme Court of California's opinion in In re Dannenberg, 34 Cal. 4th 1061 (2005), does not compel a different conclusion. Dannenberg supports, rather than rejects, the existence of a constitutional liberty interest in parole in California. Accord Machado v. Kane, No. C 05-1632 WHA (PR), 2006 WL 449146, at **2-4 (N.D. Cal. Feb. 22, 2006) (rejecting argument that Dannenberg construed section 3041 as no longer creating an expectancy of release).

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\9.25.2007\05-03525 Agrio3525_denyHC.wpd       4

evidence" to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in § 2254 habeas petition); McQuillion, 306 F.2d at 904 (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (same). The "some evidence" standard is minimally stringent: the "Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Hill, 472 US at 456 (emphasis added). The relevant question for the reviewing court is "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Id. at 455-56. The court "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the BPT's decision." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904; Jancsek, 833 F.3d at 1390. Relevant in this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987). In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. See Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir 2005).

The record shows that on May 18, 2004, petitioner appeared with counsel before a BPT hearing panel for his third parole consideration hearing. The presiding commissioner explained that in assessing whether petitioner was suitable for parole, the panel would consider factors such as the nature and number of crimes for which petitioner had been committed, his prior criminality, social history, and his behavior and programming since his commitment. See Hr'g Tr. at 6 (Resp't Ex. 6). The panel would also consider petitioner's progress since the last hearing, any new psychiatric reports, and any other information that may have a bearing on parole

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\9.25.2007\05-03525 Agrio3525_denyHC.wpd        5

suitability. The commissioner also explained that the deputy district attorney, petitioner and his counsel would be given the opportunity to make final statements regarding petitioner's suitability for parole and the length of confinement. Finally, the commissioner confirmed with petitioner that the panel appeared to be objective, as required.

The panel then discussed with petitioner the facts of the crime, how the incident unfolded, and petitioner's thoughts during the commission of the crime. Additionally, the panel inquired about petitioner's remorse, his criminal history, his social history and his plans upon release. The panel reviewed petitioner's psychological evaluation from 2003 and also heard final statements from the deputy district attorney, petitioner's attorney, and petitioner.

After recessing to deliberate, the panel concluded that petitioner was "not suitable for parole." Id. at 69. The panel explained that although petitioner was making progress and was to be commended for significant achievements while incarcerated, there were aspects about his commitment crime and lack of participation in self-help programs that required a one-year denial. The panel noted that the crime was "carried out in an especially coldhearted or cruel manner" and "in a dispassionate manner" based on undisputed facts that the victim, petitioner's wife, was shot by petitioner during a domestic argument and that she died of a single gunshot wound to the back of the head. Id. The panel also found that the motive for the crime was "inexplicable." Id.

The BPT next found that petitioner did not sufficiently participate in self-help programs to address his anger management and self-control issues. The panel noted the 2003 psychological evaluation indicating that petitioner was making progress and that his level of dangerousness in an unstructured environment was reduced, but it was still concerned that petitioner remained an "unpredictable threat to others or

society." Id. at 71. The panel urged petitioner to become involved in self-help programs with "emphasis on anger management, self-control, and if at all possibl[e] certainly domestic violence, interpersonal relationships." Id.

The California Court of Appeal, in affirming the superior court decision to deny petitioner's claim, concluded that there were facts of the commitment offense to support the BPT's decision to deny parole:

> The facts show that [petitioner] was a trained peace officer who intentionally shot his young wife in the back of the head because he was infuriated that he did no have absolute control over her. Their toddler son was present in the home at [the] time of the killing and was deprived of both his parents. The facts support the Board's conclusion the murder was coldhearted and the motive inexplicable.

In re Agrio, No. D045773, slip op. at 3 (Cal.Ct.App. Apr. 29, 2005) (Pet. Ex. A). In other words, there was "some evidence" to support the BPT's decision to deny parole. The state courts' rejection of petitioner's claim was not contrary to, or an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The BPT's May 18, 2004 decision to deny petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is - the facts surrounding the crime reasonably suggested that it was carried out in a dispassionate manner; the motive for the crime was inexplicable; and petitioner had issues of anger

management and self control which posed a risk of high level of dangerousness to the community. Cf. Cal. Code Regs. tit 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). It is not up to this Court to "reweigh the evidence." Powell, 33 F.3d at 42 (9th Cir. 1994).

The Court is satisfied that the BPT gave petitioner individualized consideration and that there is "some evidence" in the record to support the Board's decision to deny petitioner parole at the May, 18, 2004 hearing. It simply cannot be said that the state courts' rejection of petitioner's challenge to the BPT's May 18, 2004 decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a wit of habeas corpus is DENIED.

DATED:   September 21, 2007

JAMES WARE
United States District Judge